IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HEYLY T.S., individually and on behalf of his minor child, J.T.S., <br><br> Plaintiff-Appellants, <br><br> v. <br><br> STATE OF HAWAII, DEPARTMENT OF EDUCATION and KATHRYN MATAYOSHI, in her official capacity as Superintendent of the Hawaii Public Schools, <br><br> Defendant-Appellees. | ) Civ. No. 12-00327 ACK-KSC <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER AFFIRMING IN PART AND REVERSING IN PART ADMINISTRATIVE HEARINGS OFFICER'S FINDINGS OF FACT & CONCLUSIONS OF LAW

For the following reasons, the Court AFFIRMS IN PART AND REVERSES IN PART the Administrative Hearings Officer's decision below. The record is clear that Parents did not settle their claims at the pre-hearing Resolution Session. The Court therefore REVERSES the Hearings Officer's decision on that point. The Court finds, however, that Parents are not entitled to reimbursement for the costs of their son's private school education, for two reasons.

First, Parents did not present sufficient evidence to show that the private school is an appropriate educational placement for their son. Indeed, Parents presented almost no evidence at all on that issue. The Court AFFIRMS the Hearings Officer's finding on this point.

Second, equitable considerations weigh against granting reimbursement in this case. Parents' actions were unreasonable under the meaning of the IDEA. Parents enrolled their son in an expensive private school mere days after filing their request for a due process hearing, and before the statutorily-required Resolution Session designed to try to resolve such disputes. Moreover, Parents did not challenge the revised IEP that arose from the Resolution Session negotiations, which accordingly presumptively offered a FAPE.

For these reasons, the Court AFFIRMS the Hearings Officer's finding that Parents are not entitled to reimbursement.

**STATUTORY FRAMEWORK**

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 <u>et seq.</u>, was enacted by Congress to, among other things, "ensure that all children with disabilities have available to them a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs . . . [and] to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A) & (B). The IDEA provides federal money to state and local education agencies to assist them in educating disabled children, on the condition that the state and local agencies implement the substantive and procedural requirements of the IDEA. <u>See</u> <u>R.P. v. Prescott Unified Sch. Dist.</u>, 631 F.3d 1117, 1121 (9th Cir. 2011).

Under the IDEA, state and local education agencies are required to identify children with disabilities and develop annual Individual Education Programs ("IEPs") for every child. 20 U.S.C. § 1414. An IEP is a comprehensive, individualized document developed by a team of parents, teachers, and other school administrators setting out the goals for the child, and the special education and related services that are necessary to reach those goals. Id. § 1414(d). The IDEA also provides procedural safeguards to help ensure that the child receives a FAPE, including an opportunity for due process hearings for complaints alleging any violation of the IDEA. K.D. v. Dep't of Educ., 665 F.3d 1110, 1114 (9th Cir. 2011).

When a parent disagrees with the contents of an IEP, the parent may challenge that IEP by demanding an administrative due process hearing. See 20 U.S.C. § 1415(b)(6), (f)(1)(A). A parent may also enroll the child in a private program, and, upon establishing that the public school failed to provide a FAPE, may seek reimbursement. See id. § 1412(a)(10)(C)(ii). To be awarded reimbursement, a parent must establish that placement at a private school was proper under the IDEA. C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist., 635 F.3d 1155, 1159 (9th Cir. 2011)(quoting Cnty. of San Diego v. Cal. Special Educ. Hearing Office, 93 F.3d 1458, 1466 (9th Cir. 1996)).

## FACTUAL BACKGROUND

JTS is a six-year old boy who is eligible for special education in the category of autism. (Resps.' Ex. 5 at 1; Resps' Ex. 7 at 55.)

The DOE determined that JTS was eligible for special education on November 3, 2011. (Resps.' Ex. 7, at 55.) On November 9, 2011, an IEP meeting was held which Parents attended. (Resps.' Ex. 2 at 19-20.) The meeting formulated an IEP (Resps.' Ex. 5 ("November IEP")), and the next day the DOE sent Parents a written notice attaching the November IEP and offering JTS placement at public school (Resps.' Ex. 7 at 56).

The November IEP did not offer JTS one-to-one support during the school day. (Resps.' Ex. 5.) Parents had strongly emphasized the need for one-to-one services at the November 9 IEP meeting. (Hearing Transcript ("Tr.") at 28:22-29:3 & 118:6-18.) Indeed the written notice accompanying the IEP stated that JTS had demonstrated "a need for . . . one-to-one assistance in the education setting" and that Head Start or private pre-school would be inappropriate because they "would not provide the one-to-one assistance . . . needed." (Resps.' Ex. 7 at 56.)

On November 28, 2011, JTS's father, Heyly T.S., filed a request for a due process hearing regarding the November IEP. (Record on Appeal ("ROA") Ex. 1.))

On December 1, 2011, JTS's parents signed an agreement with a private school run by the Autism Behavior Consulting Group, Inc. ("ABC School"), enrolling JTS at ABC School through

November 30, 2012, at a tuition rate of $9,940 per month plus
applicable taxes. (Pets.' Ex. 9 at 84.) JTS did not start
attending ABC School, however - and Parents therefore did not
start incurring fees - until later in the month.

On December 8, 2011, the parties participated in a
telephonic "resolution session" regarding the due process
request, as required by statute. (See Resps.' Ex. 17 at 102-108
("Res. Session Summary").) At the Resolution Session, the DOE
initially offered "close adult supervision" for JTS for the first
two weeks of school. (Id. at 4.) Parents requested close
supervision for him "beyond the two week transition period and
throughout the school year." (Id.) The DOE offered close
supervision throughout the school year, which Parents indicated
would be acceptable. (Id. at 5; see Tr. at 41:3-42:21.) The
parties did not, however, reach a written settlement agreement,
and Heyly T.S. stated that he could not commit to a settlement at
that time. (Res. Session Summary at 6; Tr. at 44:23-45:16.)
Although the Resolution Session Summary states that the DOE
offered to write its offer into the IEP, the DOE apparently did
not make that offer at the Resolution Session itself. (See Tr. at
40:1-41:2 & 240:8-16.) Rather, the DOE's counsel contacted
Parents' counsel either the day of the Resolution Session or the
next day to explain that the DOE had reconsidered its position
and would be scheduling a meeting to revise the IEP. (Id. at
240:8-241:2.)

One week later, on Thursday December 15, 2011, another IEP meeting was held, which Heyly T.S. and Parents' counsel attended. (Id. at 46:19-47:12.) The meeting formulated a new IEP, which stated that "close adult supervision will be provided for [JTS's] transition to school and throughout the school day" and noted that the supervision would be offered "daily" for the duration of the IEP. (Resps.' Ex. 6 ("December IEP") at 11; see Tr. at 223:23-224:20.)

Parents never enrolled JTS in public school. Instead, JTS began attending ABC School on Monday December 19, 2011, initially attending only part-time. (Pets.' Ex. 10 at 85.) JTS had never attended any other school before that week at ABC School. (Tr. at 77:13-18.) JTS's parents were invoiced $1,1039.79 for his first week of school. (Pets.' Ex. 10 at 85.)

The DOE sent Parents a written notice on December 21, 2011, enclosing the December IEP and offering the amended services at JTS's local public school. (Resps.' Ex. 8; Resps.' Ex. 17 at 88.)[1/] The new written notice again rejected Head Start or private pre-school because they "would not provide the one-to-one assistance . . . needed." (Resps.' Ex. 8.)

In January 2012, JTS gradually increased his hours of attendance at ABC School. (Tr. at 79:15-80:9.) For January 2012, JTS's parents were invoiced a total of $4,159.16. (Pets.' Ex. 10

---

[1/] It is not clear from the record when, exactly, Parents notified the DOE that they were going to place JTS in private school.

at 86.) As of February 7, 2012, JTS was attending ABC School for 8.5 hours per day. (Tr. at 80:4-19.) Parents' counsel indicated at the hearing on the administrative appeal that JTS attended ABC School, under the December 1, 2011 contract, until November 2012. He then remained at ABC School month-to-month for two months, but as of February 2013 has been attending his local public school.

### PROCEDURAL HISTORY

As stated above, Heyly T.S. filed a due process request on November 28, 2011. (ROA Ex. 1.) On January 12, 2012, the DOE filed a motion for summary judgment, which Parents partially opposed. (ROA Exs. 6 & 7.) The Hearings Officer held a hearing on that motion on January 19, 2012, and denied the motion. (ROA Ex. 8.) At that hearing, the Hearings Officer urged Parents to amend their due process request to challenge the December IEP as well as the November IEP; Parents, through their counsel, refused to do so. (Jan 19, 2012 Tr. at 16:22-17:20.)

The evidentiary hearing regarding Heyly T.S.'s due process request began on February 7, 2012. (Admin. Dec. at 3.) It continued and was concluded on March 22, 2012. (Id.) The Hearings Officer issued his decision on May 9, 2012, finding that: (1) the November IEP denied JTS a FAPE because it did not provide him with one-to-one assistance; (2) with respect to Extended School Year services, the November IEP did provide a FAPE; (3) the discussion at the December 8 Resolution Session and the amendments in the December IEP "settled" Parents' claims regarding the November IEP; (4) Parents did not prove that ABC

7

School was an appropriate placement for reimbursement purposes; and (5) Parents did not meet their burden of proof as to any other claims related to the November IEP. (Id. at 12-16.) Parents appealed the Hearings Officer's third and fourth findings only. (Pets.' Brief at 2.)

The Court held a hearing on the administrative appeal on March 14, 2013, which Parents attended along with their counsel. (Doc. No. 21.) At the hearing, the Court asked Parents' counsel to submit, within seven days, affidavits from Parents and ABC School discussing Parents' attempts to break their contract with ABC School. Parents' counsel was to file the affidavits with the Court within seven days (with an extension available if necessary). The DOE would then have seven days to file a response. (Id.) The Court stated that it only wished to receive factual evidence, not argument or briefing.

On March 21, 2013, Parents submitted an affidavit from Heyly T.S., but none from the private school. (Doc. No. 22.) On March 28, contrary to the Court's express instructions, the DOE submitted a six-page brief discussing Heyly T.S.'s affidavit. (Doc. No. 23.) The Court therefore gave Parents a further six days to file their own six-page brief of argument. (Doc. No. 24.) Parents filed their supplemental brief on April 3, 2013. (Doc. No. 25.)

## STANDARD OF REVIEW

Under the IDEA, federal courts accord considerably less deference to state administrative proceedings than they do in

most instances of "judicial review of . . . agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." Anchorage Sch. Dist. v. M.P., 689 F.3d 1047, 1053 (9th Cir. 2012) (quoting E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Office of Admin. Hearings, 652 F.3d 999, 1005 (9th Cir. 2011)). The statute empowers the reviewing court to hear evidence that goes beyond the scope of the administrative record and, based on a preponderance of the evidence, "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). The statute gives the district court "broad discretion to craft relief." Ashland Sch. Dist. v. Parents of Student E.H., 587 F.3d 1175, 1183 (9th Cir. 2009).

Nonetheless, the statutory requirement "that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982). Administrative proceedings are accorded "due weight" and the reviewing court must, at least, "consider the findings carefully[.]" Id. (citation omitted). The reviewing court must consider the hearing officer's findings carefully and endeavor to respond to the hearing officer's resolution of each material issue. Ashland Sch. Dist., 587 F.3d at 1183 (9th Cir. 2009). An administrative hearing officer's "thorough and careful" findings receive particular deference.

Anchorage Sch. Dist., 689 F.3d at 1053 (quoting R.B. ex rel. F.B. v. Napa Valley Unified Sch. Dist., 496 F.3d 932, 937 (9th Cir. 2007)). In this case, the Hearings Officer issued a detailed sixteen-page decision explaining the basis for each of his conclusions thoroughly and carefully, with citations to the record. The Court will therefore accord his findings "particular deference." Anchorage Sch. Dist., 689 F.3d at 1053.

**DISCUSSION**

**I.   Resolution Session**

Parents argue that the Hearings Officer was incorrect in finding that their claims had been settled by the Resolution Session. The Court agrees.

Pre-hearing "resolution sessions" are required by a statute, 20 U.S.C. § 1415(f)(1)(B), which also sets out the format for any settlements reached during resolution sessions. If "a resolution is reached to resolve the [due process] complaint at" a resolution session, "the parties shall execute a legally binding agreement that is . . . signed by both the parent and a representative of the [local educational] agency . . . ." Id. § 1415(f)(1)(B)(ii).

In this case, no such written settlement agreement was issued. Indeed, the record of the Resolution Session explicitly states that "Parties did not come to an agreement" but "continue to communicate to resolve all issues before the hearing." (Res. Session Summary at 102.) The record is thus quite clear that no settlement was reached at the Resolution Session. Even if the

December IEP incorporated Parents' concerns as expressed at the Resolution Session, the December IEP was not a "legally binding agreement" signed by Parents and the DOE, as required by statute. The Hearings Officer's finding that Parents settled their claims with the DOE was therefore erroneous.[2/]

**II.   Reimbursement**

In 1997, Congress added 20 U.S.C. § 1412(a)(10)(C) to the IDEA to "clarify the circumstances in which parents who unilaterally remove their children from private school may receive tuition reimbursement." Dep't of Educ. v. M.F. ex rel. R.F., 840 F. Supp. 2d 1214, 1233 (D. Haw. 2011) (quoting M. v. Portland Sch. Comm'n, 360 F.3d 267, 271 (1st Cir. 2004)). Parents who unilaterally transfer a child from a public school to a private school do so "at their own financial risk." Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 247 (2009) (citation omitted). A parent or guardian is "entitled to reimbursement only if a federal court concludes both (1) that the public placement violated the IDEA, and (2) that the private school placement was proper under the [IDEA]." C.B., 635 F.3d at 1159 (citation omitted); see Florence Cnty. Sch. Dist. 4 v. Carter ex rel. Carter, 510 U.S. 7, 15 (1993); 20 U.S.C. § 1412(a)(10)(C). If

---

[2/] At the hearing on the administrative appeal, Counsel for the DOE conceded that the hearings officer should not have found that the dispute "settled" at the Resolution Session. Counsel nonetheless suggested that the dispute was "resolved" at the Resolution Session. This distinction is not persuasive.

either criterion is not met, the parent or guardian may not obtain reimbursement. C.B., 635 F.3d at 1159.

If both criteria are satisfied, the district court then must exercise its "broad discretion" and weigh "equitable considerations" to determine whether, and how much, reimbursement is appropriate. Id. (quoting Florence Cnty. Sch. Dist. 4, 510 U.S. at 15-16.) The court must review the conduct of both the parents and the local educational agency. Anchorage Sch. Dist., 689 F.3d at 1059. For instance, reimbursement may be reduced or denied if the parents did not inform the local educational agency that they intended to enroll their child in private school or "upon a judicial finding of unreasonableness with respect to actions taken by the parents." 20 U.S.C. § 1412(a)(10)(C)(iii).

Here, Parents' claim for reimbursement fails for two reasons: (1) Parents failed to prove that ABC School was an appropriate placement for JTS; and (2) Parents acted unreasonably such that reimbursement would not be proper in this case.

## A.   Appropriateness of Private Placement

First, Parents dispute the Hearings Officer's finding that Parents did not demonstrate that the private placement was an appropriate placement for their son. The Court agrees with the Hearings Officer that Parents did not present sufficient evidence to show that JTS's placement at ABC School is appropriate.

The burden is on parents seeking reimbursement to demonstrate that the private school in which they have chosen to enroll their child is appropriate. M.H. v. Dep't of Educ., 685

F.3d 217, 246 (2d Cir. 2012). In this case, Parents presented almost no evidence at all on this issue. Parents presented only two witnesses at the hearing; Parents themselves. The only evidence Parents presented regarding JTS's current private placement was Parents' own subjective impressions that JTS's communication skills and eye contact levels had improved since attending ABC School. (Tr. at 54:23-55:4.) Neither Parent testified to any expertise in education or development, either in general or particularly related to autism spectrum disorders. Nor did either Parent testify in any degree of detail about the programming that ABC School provides.

The Court is sensitive to Parents' argument that at the time of the administrative hearing, JTS had only been attending ABC School for a short time and that it was therefore difficult to present evidence of his progress. The Court cannot fault the Hearings Officer, however, for moving to hear the dispute quickly. Parents could have presented evidence of ABC's programming, staffing, and resources, and their fitness for JTS's particular needs, from a witness qualified to discuss them. They did not.

The Hearings Officer found, and the Court affirms, that Parents did not present sufficient evidence to show that ABC School was an appropriate placement for purposes of reimbursement.

**B.    Equitable Considerations**

Second, even if Parents had demonstrated that the private placement to which they moved their son was appropriate (which they have not), reimbursement would not be automatic. If a parent demonstrates that the school district has failed to offer a FAPE and that the private placement is appropriate, the court must then "exercise its 'broad discretion' and weigh 'equitable considerations' to determine whether and how much reimbursement is appropriate." C.B., 635 F.3d at 1159 (quoting Florence Cnty. Sch. Dist. 4, 510 U.S. at 15-16.) The Ninth Circuit has issued guidance as to the equitable factors the district courts should consider:

> In making this determination, the district court may consider all relevant equitable factors, including, inter alia, notice to the school district before initiating the alternative placement; the existence of other, more suitable placements; the parents' efforts in securing the alternative placement; and the level of cooperation by the school district.

Anchorage Sch. Dist., 689 F.3d at 1059. The court must consider the conduct of both parties to determine whether relief is appropriate. Id.

In this case, the equitable considerations do not fall in Parents' favor. The purpose of the statute requiring resolution sessions and of revisions to an IEP is to allow the state educational agency a chance to rectify problems with a challenged IEP. 20 U.S.C. § 1415(f)(I)(B)(i)(IV) (At resolution session, "the local educational agency is provided the

opportunity to resolve the complaint."); see, e.g., S.J. ex rel. S.H.J. v. Issaquah Sch. Dist. No. 411, 326 Fed. App'x 423, 426 (9th Cir. 2009) (upholding denial of reimbursement where parent "did not provide the District with an opportunity to address his objections to his IEP prior to his private placement"); Burlington v. Dep't of Educ., 736 F.3d 773, 794 (1st Cir. 1984) (purpose of revising challenged IEPs is to "assist in promoting settlements"). The resolution session is held, by statute, within fifteen days of the filing of parents' due process request.

The record shows that Parents signed an apparently unbreakable contract with an expensive private school only three days after filing their request for a due process hearing, and before the Resolution Session that is required to try to resolve their disputes. The DOE participated in good faith in the Resolution Session and offered at the Resolution Session many of the items that Parents requested. Although during the Resolution Session itself, the DOE (on the advice of counsel) avoided promising to revise the IEP, the DOE's counsel contacted Parents' counsel either that same day or the next day to inform Parents that the DOE was willing to revise the IEP; the meeting to revise the IEP took place one week later, and at that meeting the DOE acquiesced to Parents' requests. Nonetheless, JTS began attending the private school - and Parents began incurring the expenses for which they seek reimbursement - three days after that IEP meeting. When they received the new IEP, Parents expressly refused to challenge it, even when requested to do so by the

Hearings Officer. (Tr. of Jan. 19, 2012, at 16:22-17:20.)[3/] To reimburse Parents under these circumstances would contravene the spirit of the IDEA's procedural protections.

Parents' counsel argued at the hearing on the administrative appeal - for the first time - that Parents could not withdraw JTS from ABC School after December 1, 2011, because the school had refused to release Parents from their contract. The Court gave Parents the opportunity to file affidavits to this effect, and both parties filed argument about the affidavit that Parents filed.[4/] That affidavit does not demonstrate that Parents acted reasonably when dealing with ABC School. The affidavit

---

[3/] At the hearing on the administrative appeal, Parents' counsel conceded that the December IEP was presumptively valid, since Parents had the burden of proof that it was invalid, and had declined to challenge it. See Schaffer ex rel. Schaffer v. Weast, 549 U.S. 49, 51 (2005) (parents have burden of proof that an IEP does not provide a FAPE). As the Supreme Court explained: "Petitioners in effect ask this Court to assume that every IEP is invalid until the school district demonstrates that it is not. The Act does not support this conclusion." Id. at 59; see W. ex rel. Louise W. v. The Rose Tree Media Sch. Dist., 395 Fed. App'x 824, 827 (3d Cir. 2010) ("Regardless of C.W.'s implications that her IEP was deficient, the appropriateness of her IEP is not challenged on appeal, and we must accept that her IEP offered a free appropriate public education."); Carlisle Area Sch. v. Scott P. ex rel. Bess P., 62 F.3d 520, 538 (3d Cir. 1995) ("[T]he 1991-92 IEP was not challenged and was therefore presumptively appropriate."). For this reason, the Court disagrees with the reasoning of Saki v. Dep't of Educ., Civ. No. 09-00209, 2008 WL 1912442, at *8 (D. Haw. Apr. 30, 2008).

[4/] As noted above, the DOE filed its brief contrary to the Court's express instructions, and the Court then gave Parents permission to file an opposing brief. Counsel for the DOE is cautioned not to disobey the Court's orders in the future, and is reminded of the Court's power to sanction for failure to obey the Court's orders. See Air Separation Inc. v. Underwriters at Lloyd's of London, 45 F.3d 288, 291 (9th Cir. 1995).

references a single conversation with the owner of the school, in which she told Parents that someone would have to take JTS's place at the school. (Doc. No. 22 at ¶¶ 3-4.) Parents presented no evidence that they tried to find another child to take JTS's place or attempted any further negotiations with the school, despite the fact that JTS apparently attended the school for more than a year.

In sum, to the extent that the contract with ABC School was truly unbreakable, it was unreasonable for Parents to sign an unbreakable contract for expensive school services for a full year, when their son had never attended any school at all, let alone that school; particularly mere days after filing a request for a due process hearing concerning their son's IEP, and before the statutorily-required Resolution Session. To the extent that the contract with ABC School was breakable, it was unreasonable for Parents not to break it after receiving the December IEP, which they have explicitly refused to challenge and which is therefore presumptively valid.

Parents' testimony at the administrative hearing shows them to be loving parents who are intensely concerned with their son's health and education. Their zealousness is admirable. The law is clear, however, that if parents wish to be reimbursed for private school costs, they must make reasonable efforts to work with their local educational agency before unilaterally removing their child to a private school. In this case, Parents behaved unreasonably under the meaning of 20 U.S.C.

§ 1412(i)(3)(B)(i)(*ll*). The Court therefore AFFIRMS the Hearings Officer's conclusion that Parents are not entitled to reimbursement.

## **CONCLUSION**

For the foregoing reasons, the Court REVERSES the Hearings Officer's finding that Parents "settled" their claims with the DOE, but AFFIRMS the Hearings Officer's finding that Parents are not entitled to reimbursement for the costs of JTS's education at ABC School. There are no issues for remand.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, April 5, 2013



_____
Alan C. Kay
Sr. United States District Judge


Heyly T.S. v. Dep't of Educ., Civ. No. 12-00327 ACK KSC, Order Affirming in Part and Reversing in Part Administrative Hearings Officer's Findings of Fact & Conclusions of Law